UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - X

VERNA LINGO, Personally and as
Personal Representative of the
Estate of Randel L. Lingo, deceased,
and as Guardian Ad Litem for Matthew        REPORT AND
Lingo and Jordan Lingo,                     RECOMMENDATION

                Plaintiff,
                             CV 2001-4507 (LBS)(MDG)

      -against-

M.B. AUTOATTREZZATURE s.r.l. et al.,

                Defendants.

- - - - - - - - - - - - - - - - - - X

GO, United States Magistrate Judge:

    Plaintiff Verna Lingo ("Lingo") brings this diversity action
on behalf of herself, her minor children, Matthew and Jordan
Lingo, and the estate of Randel L. Lingo to recover damages for
wrongful death and other injuries sustained by Randel Lingo.
Plaintiff alleges, inter alia, that on September 25, 1998, an
industrial solvent recycler manufactured by M.B. Autoattrezzature
s.r.l. ("Autoattrezzature") caused a flash fire and explosion
that caused burns to most of Mr. Lingo's body and, ultimately,
brought about his death. See Complaint at ¶¶ 9-11, 19.
Assicurazioni Generali, S.p.A. ("Generali") was
Autoattrezzature's product liability insurer. Autoattrezzature's
Third Party Complaint against Generali at ¶¶ 4-7; Declaration of
Robert S. Popescu dated December 4, 2003 ("12/4/03 Popescu
Decl.") at ¶ 4.

Autoattrezzature moves for default judgment against Generali and Generali cross-moves for an enlargement of time to answer the complaint.

## FACTUAL BACKGROUND

Prior to commencing the instant action, plaintiff's counsel wrote directly to Autoattrezzature and provided it with an informal notice of claim. 12/4/03 Popescu Decl. at ¶ 5. By letter dated October 6, 2000, Autoattrezzature requested that Generali provide coverage and undertake defense of this matter. Id. at ¶ 6, Exh. A. Generali responded on October 24, 2000 that it would entrust the defense of this matter to Pino & Associates and requested that Autoattrezzature execute an authorization enabling the law firm to undertake defense on its behalf. Id. at ¶ 7, Exh. B. However, by letter dated November 29, 2000, Generali advised Autoattrezzature that it declined coverage and could not "give this case our consideration." Id. at ¶ 8, Exh. C. Counsel for Autoattrezzature renewed its request that Generali undertake defense by letter dated January 16, 2001. Id. at ¶ 9, Exh. D. In a letter dated February 12, 2001, Generali reiterated its position that it could not "give this case our consideration." Id. at ¶ 10, Exh. E.

On July 6, 2001, plaintiff filed the instant action. Ct. doc. 1. On March 13, 2002, Autoattrezzature filed a third party complaint against Generali. Ct. doc. 9. By letter dated March 5, 2002, Robert Popescu, Autoattrezzature's counsel, informed Generali that Autoattrezzature had filed a third party action

against it.  See 12/4/03 Popescu Decl. at ¶ 12, Exhs. F (letter
attaching a copy of the summons and third party complaint in both
English and Italian), G (Italian translation).  He requested that
Generali voluntarily accept service of process to avoid the time
and expense of formal service.  Id., Exh. F.  Counsel for
Autoattrezzature received a response dated March 25, 2002 from
Generali's Venice office reiterating the decision to deny
coverage while requesting that all further documentation be sent
to the Venice office.  Id. at ¶ 16, Exh. H.  Generali did not
respond to the request to accept service voluntarily.  Id.

     In April 2002, Mr. Popescu received a telephone call from
Stan Bailey, an Assistant Vice President of Generali USA.  Id. at
¶ 13.  Mr. Bailey advised that he was aware of the claim made
against the policy and was asked by Generali's Italy based home
office to investigate the matter.  Id. at ¶ 14.  At Mr. Bailey's
request, Mr. Popescu sent additional copies of all pleadings, as
well as a copy of the March 5, 2002 letter previously sent to
Generali's office in Italy.  Id.  In subsequent conversations
with Mr. Bailey, counsel discussed the claims at issue.  Id. at
¶ 15.  During Mr. Bailey's last conversation with counsel, on
October 29, 2003, Bailey informed him that Generali's Venice
office would continue to handle the matter and that Generali
maintained its position of no coverage.  Id.; Declaration of
Robert S. Popescu dated March 15, 2004 ("3/15/04 Popescu Decl.")
at ¶ 2.

Autoattrezzature formally served Generali with process on September 17, 2002 and again on March 27, 2003. The first service was made by an Italian judicial officer hand delivering a copy of the third party complaint, including an Italian translation, to Roberto Toffano, a Generali employee at its office in Trieste, Italy. <u>See</u> Declaration of Roberto Toffano dated January 16, 2004 at ¶ 1 ("Toffano Decl."); Affirmation of Rudolph Pino, Jr. dated November 14, 2003 ("11/14/03 Pino Aff.") at ¶ 6, Exh. C; ct. doc. 24. On March 27, 2003, Autoattrezzature served Generali with process through Italy's Central Authority, which caused a copy of the documents to be hand delivered to Adriana Laurenti, also a Generali employee in its Trieste, Italy office. <u>See</u> Declaration of Adriana Laurenti dated January 22, 2004 ("Laurenti Decl.") at ¶ 1; Second Affirmation of Joanna Roberto dated January 22, 2004 ("1/22/04 Roberto Aff.") at ¶ 5; 12/4/03 Popescu Decl. at ¶ 17.

On June 13, 2003, Autoattrezzature filed a motion for default judgment which was entered on the court docket as "Notice of Motion for Default Judgment as to Assicurazioni Generali, S.p.A." <u>See</u> ct. doc. 31. Although only the first page of the submission, a notice of motion, was scanned and filed electronically, <u>id.</u>, Mr. Popescu represents that he filed the notice of motion "along with all supporting documents on June 13, 2003." <u>See</u> Letter to Court from Robert S. Popescu dated March 25, 2004 at 1 ("Popescu Let." to be filed herewith). Mr. Popescu stated that, a few months later, he was contacted by someone

working with Joanna Roberto, of Pino & Associates, who stated that the firm was monitoring the case on behalf of Generali.  <u>Id.</u> Advising that he had moved for default judgment, Mr. Popescu replied in response to a request for a copy of the default papers that he wanted a written request.  <u>Id.</u>[1]

Joanna Roberto, counsel for Generali, states that she contacted my chambers, as well as Mr. Popescu, to inquire whether a motion for entry of default had been entered.  Declaration of Joanna Roberto dated March 18, 2004 ("3/18/04 Roberto Decl.") at ¶ 8.  My law clerk receiving the calls could not provide information since we neither had a copy of the motion papers nor were able to locate a copy in the Court file.

The court docket sheet reflects an entry on November 5, 2003 for Autoattrezzature's "Motion for Default Judgment as to third party defendant [Generali]."  <u>See</u> ct. doc. 44.  According to Mr. Popescu, he filed the motion only on June 13, 2003, but did provide copies to Judge Sand and later, to me on October 30, 2004.[2]  Popescu Let. at 2.

---

[1]  Mr. Popescu claims that he received no written request, while Joanna Roberto claims that she did send a request.  Popescu Let. at 2; Affirmation of Joanna Roberto dated November 24, 2004 ("11/24/03 Roberto Aff.") at ¶ 8.  This dispute is not material since, as discussed below, filed documents need not be served on non-appearing parties and Autoattrezzature never served the motions papers on Generali.

[2]  As my chambers did not receive a copy of Mr. Popescu's letter of October 30, 2004, this Court surmises that the motion papers filed on November 5, 2003 may have been the copy transmitted by Mr. Popescu.  This Court has not been able to locate either set of motion papers filed in the Court file.

Generali submitted its motion for an enlargement of time to the Clerk of the Court for filing on November 7, 2003, although it appears that the motion was never docketed.

DISCUSSION

Where a default has not been entered and the plaintiff's motion for default judgment is pending at the time defendant seeks to enlarge its time to answer the complaint, courts in this Circuit apply Rule 55(c)'s "good cause" analysis.  Traguth v. Zuck, 710 F.2d 90, 94 (2d Cir. 1983); Meehan v. Snow, 652 F.2d 274, 275-76 (2d Cir. 1981); Grant v. City of New York, 145 F.R.D. 325, 326 (S.D.N.Y. 1992); Walpex Trading Co. v. Yacimientos Petroliferos Fiscales Bolivianos, 109 F.R.D. 692, 694 (S.D.N.Y. 1986).  Rule 55(c) of the Federal Rules of Civil Procedure provides that "[f]or good cause shown" the court may set aside an entry of default.  As the Second Circuit has consistently recognized, "'[s]trong public policy favors resolving disputes on the merits' and that ... 'abuses of process may be prevented by enforcing those defaults that arise from egregious or deliberate conduct.'"  Pecarsky v. Galaxiworld.com Ltd., 249 F.3d 167, 171 (2d Cir. 2001).  Because defaults are generally disfavored and where doubts exist as to whether a default should be granted or vacated, the doubt should be resolved in favor of vacating the default.  Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 96 (2d Cir. 1993).

The disposition of a motion to vacate judgment is left to the discretion of the district court.  Enron, 10 F.3d at 95.  In

exercising its discretion as to whether to relieve a party from
default or default judgment, the court should consider three
factors: (1) whether the default was willful; (2) whether setting
aside the default would prejudice the adversary; and (3) whether
a meritorious defense is presented. <u>Pecarsky</u>, 249 F.3d at 171.
Furthermore, the court may consider whether the entry of default
would bring about a harsh or unfair result. <u>Enron</u>, 10 F.3d at
95.

In finding that a defendant's default is willful, the court
must be persuaded that defendant "deliberately chose not to
appear." <u>Pecarsky</u>, 249 F.3d at 171. When a defendant's conduct
is willful, default judgment against him may not be vacated
absent "compelling reasons" -- for example, where the claims were
"facially invalid or utterly unsupportable" such that the
resulting judgment "constituted a serious miscarriage of
justice." <u>Wagstaff-El v. Carlton Press Co.</u>, 913 F.2d 56, 57-58
(2d Cir. 1990).

<u>Sufficiency of Service</u>

Before default may be entered, the court must first
determine whether the defaulting party has been properly served.
<u>Copelco Capital, Inc. v. General Consul of Bolivia</u>, 940 F. Supp.
93, 94 (S.D.N.Y. 1996). Generali argues that Autoattrezzature
did not properly serve its offices in Trieste, Italy. First,
Generali contends that the September 17, 2002 service was
improper because service was not effectuated through the Italian
Central Authority and, in any event, Mr. Toffano could not accept

-7-

process because he is not a legal representative of Generali. See 1/22/04 Roberto Aff. at ¶ 5.

Fed. R. Civ. P. 4(f)(1) provides that where there is a treaty with a foreign nation, service of process outside the United States must be effected by the means provided in the treaty.[3] Since Italy and the United States are both signatories to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Hague Convention" or "Convention") (reprinted as Appendix to Fed. R. Civ. P. 4), the Convention is applicable to the instant action. Among other methods, the Hague Convention permits service by international mail, through a judicial officer or through formal request addressed to the Central Authority designated by a contracting state. See Convention, Art. 2, 3, 5, 10; U.S. State Department Circular at 1-2 (attached to Autoattrezzature's Second Memorandum of Law dated January 7, 2004 as Exh. A and 1/22/04 Roberto Aff. as Exh. C).

---

[3] The parties have submitted affidavits from Italian lawyers who are purported to be knowledgeable about international and Italian law. Generali has provided two affidavits from Daniela Meregalli while Autoattrezzature relies on three affidavits from Piero Pupini and one affidavit from Gian Piero Rinaldai.

Under Fed. R. Civ. P. 44.1, a court determining foreign law, "may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination shall be treated as a ruling on a question of law." Although these affidavits sometimes offer bare conclusions without explanation, this Court finds that other portions are sufficient to be considered under Rule 44.1.

Article 10(c) of the Hague Convention provides that if the contracting nation does not object, a party may effect service directly through judicial officers of that nation. The Italian Central Authority has informed the Hague Conference for Private International Law that judicial officers working for the Italian courts may serve documents in Italy. <u>See</u> U.S. State Department Circular at 2. Thus, under the Hague Convention, it was proper for Autoattrezzature to serve Generali directly through an Italian judicial officer rather than through the Italian Central Authority. <u>See</u> <u>Koehler v. Dodwell</u>, 152 F.3d 304, 307-08 (4th Cir. 1998); <u>United States v. Islip</u>, 18 F. Supp.2d 1047, 1054-58 (Ct. Int'l Trade 1998); <u>Tax Lease Underwriters, Inc. v. Blackwall Green, Ltd.</u>, 106 F.R.D. 595, 596 (E.D. Mo. 1985); <u>Vazquez v. Sund Emba Ab</u>, 548 N.Y.S.2d 728, 730-31 (2d Dep't 1989).

Generali further argues that notwithstanding the Hague Convention, the first paragraph of Article 71 of Italian Law No. 218 of May 31, 1995 requires that service from outside Italy "be authorized by the Public Prosecutor at the Court in which jurisdiction the service must be executed." Declaration of Daniela Meregalli dated February 11, 2004 ("2/11/04 Meregalli Decl.") at ¶ 3. However, Generali overlooks article 2 of Law 218, which provides that it "shall not affect the application of any international conventions to which Italy is a party." Article 2, first paragraph, of Law No. 218, of May 31, 1995 (reprinted in 35 ILM 760 (1996)). More importantly, Law 218 does not apply because there is no evidence that Italy has filed

a declaration of opposition to the service provisions of Article 10(c) as required by Art. 21(2)(a) of the Convention.  <u>See</u> <u>Koehler</u>, 152 F.3d at 307; <u>Ackermann v. Levine</u>, 788 F.2d 830, 840 (2d Cir. 1986) (whether service in the United States complied with Fed. R. Civ. P. 4 was irrelevant because the United States did not limit its ratification of the Hague Convention regarding mail service); <u>Vazquez</u>, 548 N.Y.S.2d at 732.

Generali also relies on Article 15 of the Convention to support its position that service must be proper under Italian law.  Article 15 provides that where the defendant has not appeared, judgment should not be entered unless service was effected by a method prescribed by the internal law of the State addressed for the service of documents in domestic actions upon persons who are within its territory.  However, Article 15 also permits entry of judgment when service was effected by actual delivery of the document by another method provided for by the Convention.  Here, Autoattrezzature satisfied the latter provision in serving Generali by actual delivery of the documents by a method provided for by the Convention, service through a judicial officer.  Thus, Autoattrezzature need not demonstrate that service was effected properly under Italian law.  <u>See</u> <u>Thomas v. Biocine Sclavo, S.P.A.</u>, No. 94 CV 1568, 1998 WL 51861, at *2 (N.D.N.Y. Feb. 4, 1998).

In any event, service on Generali did, in fact, comply with Article 145 of the Italian Civil Procedure Code.  Article 145 authorizes service of process at a corporation's registered

office by delivery to the corporation's legal representative, or to the person in charge of receiving service of documents or to another person assigned to the registered office.  See Declaration of Daniela Meregalli dated January 20, 2004 ("Meregalli Decl.") at ¶ 11, Exh. 5.  The Italian Supreme Court of Cassation has interpreted this provision to mean that "it is not necessary for the person accepting the delivery to be expressly assigned to the task of receiving service of documents, it being sufficient for them to be found on the premises where the service is delivered not just on an occasional basis, but rather by virtue of their particular relationship (working or of another kind) with the addressee corporation, so that it may be reasonably assumed that the document will be delivered to the latter."  Declaration of Piero Pupini dated February 3, 2004 ("2/3/04 Pupini Decl.") at ¶ 3.  In other words, the clause "'any other person assigned to the registered office,'" means that service may be made on "any corporation's employee which, for his/her job duties, is not occasionally assigned to the corporation's registered office."  1/20/04 Meregalli Decl. at ¶ 11.

Even if Mr. Toffano is not Generali's "legal representative," it is undisputed that Mr. Toffano was a Generali employee assigned to its offices in Trieste.  Thus, I find that Generali was properly served on September 17, 2002 in accordance with a method both prescribed by the Hague Convention and in accordance with Italian law.

As to the March 27, 2003 service, although Generali acknowledges that Autoattrezzature properly utilized the Italian Central Authority, Generali again claims that service was not effective because the documents were hand delivered to Adriana Laurenti who was not Generali's legal representative. However, like Mr. Toffano, since Ms. Laurenti was regularly employed by Generali at its Italy offices, service by hand delivery to her was proper under the Italian Civil Procedure Code. Laurenti Decl. at ¶ 1; 2/3/04 Pupini Decl. at  ¶ 3. Indeed, Generali concedes that the March 27, 2003 service was executed in compliance with all applicable laws. 1/20/04 Meregalli Decl. at ¶ 14.2.

Moreover, Autoattrezzature may have properly served Generali by mail. On March 5, 2002, Autoattrezzature mailed Generali a letter informing it that Autoattrezzature had filed a third party action against it and attaching a copy of the pleadings in both English and Italian. 12/4/03 Popescu Decl. at ¶ 12, Exhs. F, G. Article 10(a) of the Convention protects "the freedom to send judicial documents, by postal channels, directly to persons abroad," as long as the nation does not object to service by international mail. See Ackermann, 788 F.2d at 838-39 (allowing service by international mail where country has not objected to mail service under Article 10(a)). Several courts have, in fact, held that service by international mail in Italy is proper service. See Eli Lilly & Co. v. Roussel Corp., 23 F. Supp.2d 460, 473-74 (D. N.J. 1998); Robins v. Max Mara, U.S.A., Inc., 923

F. Supp. 460, 469 (S.D.N.Y. 1996); <u>R. Griggs Group Ltd. v.</u>
<u>Filanto Spa</u>, 920 F. Supp. 1100, 1103-07 (D. Nev. 1996).  Thus, I
conclude that Autoattrezzature properly served Generali at least
twice, first on September 17, 2002 and then on March 27, 2003.

<u>Willfulness</u>

Generali argues that its default was not willful because its
employees mistakenly did not provide the documents to the proper
party or delayed the process by failing to promptly act on them.

As a preliminary matter, it is undisputed that Generali
received notice of the commencement of the underlying action, as
well as the third party action, and steadfastly declined to
defend Autoattrezzature in this matter.  In late 2000, Generali
advised Autoattrezzature that it declined coverage and could not
"give this case our consideration."  In response to further
requests by Autoattrezzature, Generali reiterated its position in
early 2001 that it could not "give this case our consideration."

After Autoattrezzature advised in March 2002 that it had
filed a third party action against Generali, an Assistant Vice
President of Generali USA contacted Autoattrezzature's counsel
in April 2002.  In the course of discussions ending in late
October 2003, Mr. Popescu sent him additional copies of all
pleadings, as well as a copy of the March 5, 2002 letter
previously sent to Generali's office in Italy.

Despite receiving actual notice of the filing of the third
party complaint, being served twice at its offices in Italy and
monitoring this action through an officer of its American

-13-

subsidiary and then through counsel, Generali did not respond to the third party action until November 7, 2003 when it moved for an enlargement of time to answer.  This is more than one year after the first service and seven months after the second service.

Generali's explanations for failing to respond are unpersuasive, notably failing to explain what happened to the third party complaint after it was served by delivery upon Mr. Toffano and Ms. Laurenti.  Nor does Generali provide a sworn statement from an officer or other responsible employee with first hand knowledge of the facts to establish that Generali was, in fact, not aware that it had been served with the third party complaint on September 17, 2002 or March 27, 2003.

Rather, Generali provides declarations only from the employees who received the hand delivered copies of the third party complaint.  Mr. Toffano, the clerk first served, states that he merely receives mail and "make[s] arrangements to forward it to the appropriate Generali department to which it is addressed."  Toffano Decl. at ¶ 4.  Similarly, Ms. Laurenti, who was served on March 27, 2003, claims she is just an office clerk and does not recall either receiving the pleadings at issue nor whether she forwarded the documents to another division or agency of Generali.  Laurenti Decl. at ¶ 5.  However, neither declarant gives any indication that he or she would not have forwarded the process received.

Generali contends that its delay in responding to the complaint is due to Toffano's and Laurenti's failure to appreciate the significance of the pleadings they received. This effort to re-cast Generali's conduct to be the result of clerical error is both not credible and belied by the record. Foremost, Generali is an insurance company undoubtedly involved in disposition of claims and lawsuits. As noted by Ms. Laurenti, Generali has a procedure for registering legal notices and pleadings received. Laurenti Decl. at ¶ 5. Although Ms. Laurenti states that Generali's register does not contain an entry reflecting receipt of the process served on March 27, 2003, she also admits that the certification (presumably of receipt) contains her signature.[4] Id. In any event, that there is no entry on Generali's register is not necessarily proof that Generali was not aware that the third party complaint had been served.

Irrespective of whether Generali's two employees had only clerical duties limited to processing mail or documents received, service was, in fact, made by hand-delivery on Generali's office, first by a judicial officer and then through the Italian Central Authority. While it is possible that two employees of an insurance company given the responsibility to receive mail and process might occasionally misdirect or misplace documents

---

[4] Ms. Laurenti also declares that she "could not tell by the documents served if they were informational or required any legal action to be taken," even though also claiming she has no recollection of having received the documents. Laurenti Decl. at ¶ 7.

received by mail, it is less plausible that the hand delivered process would <u>twice</u> not have been forwarded to the appropriate authorities.  <u>Compare</u> <u>American Alliance Ins. Co. v. Eagle Ins. Co.</u>, 92 F.3d 57 (2d Cir. 1996) (misfiling of complaint served on the Superintendent of Insurance and forwarded by mail to defendant excused).

In arguing that Mr. Toffano did not understand the significance of the process received, Generali points to the fact he does not read or write English and lacks knowledge about American litigation practices.  11/14/03 Pino Aff. at ¶ 11.  In fact, Mr. Toffano received copies of the pleadings in both Italian and English.  <u>See</u> ct. doc. 24.  In any event, the issue is not whether Mr. Toffano understood the ramifications of the complaint, but whether Generali was, in fact, aware of the process received by Mr. Toffano and Ms. Laurenti shortly after service.  On the record presented, this Court concludes that Generali was indeed so aware.

Further, Autoattrezzature filed a return of service reflecting service on Generali on September 17, 2002.  <u>See</u> ct. doc. 24.  Although it did not file a return of service with respect to the service on March 27, 2003, this Court noted on a calendar entry for a conference on April 24, 2003 that "Counsel advised that service on the 3rd party dft has been effectuated pursuant to the provisions of the Hague Convention."  <u>See</u> ct. doc. 29.  Notwithstanding these entries, communications between an officer of Generali's New York Branch and Mr. Popescu for an

extended period of time and an entry that a notice of motion had been filed on June 13, 2003, Generali still did not file its motion for an enlargement of time until November 7, 2003, after the motion for default was entered on the docket on November 5, 2003.

Generali's counsel claims confusion over whether a motion for entry of default had been filed, 11/14/03 Pino Aff. at ¶ 8, but the notice of motion for default filed on June 13, 2003 clearly indicates that Autoattrezzature is seeking entry of default judgment. In fact, counsel claimed in an earlier submission that "Generali only discovered that default proceedings were pending against it after a review of the Court's file" which then spurred efforts to obtain copies of the documents from Mr. Popescu. 11/24/03 Roberto Aff. at ¶ 12. According to Mr. Popescu, he received inquiries from Generali's counsel several months after June 13, 2003. Popescu Let. at 1.

Generali also dwells on Autoattrezzature's failure to give notice of its intent to move for default or serve Generali with a copy of the motion, but has not, and cannot, cite any legal authority that either is required. What is critical is that the court docket sheet indicates that service had been effectuated against Generali in September 2002 and again in April 2003. Irrespective of what Mr. Popescu did or did not say in his communications with Mr. Bailey, Generali was not excused from responding to the complaint within 90 days, where upon it would have had the right to challenge service or venue. Fed. R. Civ.

P. 12(a)(1)(B); 12(b)(3) and (5). Generali, which had been
monitoring the course of the litigation, <u>see</u> 11/24/03 Roberto
Aff. at ¶ 12, should have been aware of this and, as I have
found, was indeed aware of the service. While the better course
would have been for Autoattrezzature to serve its motion for
default upon Generali, the fact remains that Generali did not see
fit to respond to the complaint until long after becoming aware
that it had been served. That Generali waited to move for an
enlargement of time only after the motion for default had been
docketed a second time underscores the fact that Generali
deliberately chose not to answer the complaint and delayed
seeking leave to file its tardy answer. Under these facts, I
find that Generali has willfully defaulted. <u>See</u> <u>American</u>
<u>Alliance</u>, 92 F.3d at 60 (Second Circuit has refused to vacate
judgment where moving party "had apparently made a strategic
decision to default") (citing cases); <u>Jeri-Jo Knitwear, Inc. v.</u>
<u>E.S. Sutton, Inc.</u>, No. 94 Civ. 8551, 1995 WL 714367, at *2
(S.D.N.Y. Dec. 1, 1995) (denying motion to vacate default where
defendant had notice of suit "but simply did not respond"").
Generali's arguments fall short of explaining why it did not
respond to Autoattrezzature's repeated attempts to engage
Generali in this litigation. <u>See</u> <u>SEC v. McNulty</u>, 137 F.3d 732
(2d Cir. 1998) ("court may find a default to have been willful
where the conduct of counsel or the litigant was egregious and
was not satisfactorily explained"); <u>Howard Johnson Int'l, Inc. v.</u>

<u>Wang</u>, 7 F. Supp.2d 336 (S.D.N.Y. 1998) (willful failure to defend this action weighs heavily against denying the default judgment).

Once willful default is found, default judgment should ordinarily be entered unless the claims are "preposterous . . ., facially invalid or utterly unsupportable" such that the resulting judgment would "constitute[] a serious miscarriage of justice." <u>Wagstaff-El v. Carlton Press Co.</u>, 913 F.2d at 57-58; <u>see also</u> <u>Brien v. Kullman Indus., Inc.</u>, 71 F.3d 1073, 1077-78 (2d Cir. 1995) ("courts should not set aside a default when it is found to be willful"); <u>Wiesner v. 321 W. 16th St. Assocs.</u>, No. 00 Civ. 1423, 2000 WL 1585680, at *4 (S.D.N.Y. Oct. 25, 2000) ("Ordinarily a finding of willfulness will so offend our notion of an efficient administration of justice that [a] default judgment will stand"). Although "a finding of willfulness obviates the need to continue the inquiry regarding the existence of a meritorious defense and prejudice to plaintiff," the Court will briefly address those issues. <u>Barnes v. Printon, Inc.</u>, No. 93 Civ. 5085, 1999 WL 335362, at *3 (S.D.N.Y. May 25, 1999).

<u>Prejudice</u>

"[T]o establish prejudice, a plaintiff must demonstrate that the delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." <u>Argus Research Group, Inc. v. Argus Sec., Inc.</u>, 204 F. Supp.2d 529, 532 (E.D.N.Y. 2002). Here, vacating default may prejudice plaintiff and Autoattrezzature, who proceeded to complete discovery after service on Generali.

Eleven witnesses were deposed in conjunction with a companion case in South Dakota. Locating all eleven witnesses, should Generali insist on conducting depositions too, may be more difficult given that several witnesses no longer work at the company. If Generali objects to use of these depositions it will create increased difficulties in discovery.

Potential Defenses

Generali sets forth three defenses it claims warrant denying Autoattrezzature's motion for default.

First, Generali claims that this Court lacks jurisdiction over the third party action because Article 19 of the insurance policy operates as a forum selection clause requiring that all coverage disputes be litigated in Italy. The existence of a forum selection clause raises an issue of improper venue, not subject matter jurisdiction. See M/S Bremen v. Zapata Off Shore Co., 407 U.S. 1, 12 (1972). As the Supreme Court has long recognized, "[a] defendant, properly served with process by a court having subject matter jurisdiction, waives venue by failing to seasonably assert it, or even simply by making default." Hoffman v. Blaski, 363 U.S. 335, 343 (1960); see also Kingvision Pay-Per-View Corp., Ltd. v. Tardes Calenas Moscoro, Inc., No. 01 Civ. 9775, 2004 WL 473306, at *2 (S.D.N.Y. March 12, 2004) (quoting Rogers v. Hartford Life and Accident Ins. Co., 167 F.3d 933, 942 (5th Cir. 1999)) ("defaulting party waives defects in venue"); RC Entertainment, Inc. v. Rodriguez, No. 98 Civ. 8585, 1999 WL 777903, at *2 (S.D.N.Y. Sept. 29, 1999) (denying

defendant's motion to set aside default judgment).  Because
Generali failed to assert an improper venue defense prior to the
time it was required to appear or answer, Generali has waived any
defense based on this ground.

In any event, Generali's venue objection is meritless.
Article 19 provides that any dispute concerning the policy must
be litigated either before the Court of Milan, the place where
the contract was entered into, or the place where the agency
responsible for managing the contract is located.  Declaration of
Piero Pupini dated December 4, 2003 ("12/4/03 Pupini Decl."),
Exh. A; Attachment to Letter to Court from Joanna Roberto dated
January 15, 2004.  However, according to the uncontradicted
affidavit of Autoattrezzature's Italian counsel, the language of
the forum selection clause in Italian, entitled "Competenza
territoriale," refers to the selection of venue among the courts
of the various districts within the Italian state rather than
between Italian and foreign courts.  2/3/04 Pupini Decl. at ¶¶ 9-
10.  Indeed, in Generali's translation, Article 19 is entitled
"Territorial authority," which tends to support
Autoattrezzature's position that the parties intended to exclude
Italian judges other than those of Milan and Bologna.

Irrespective of whether Article 19 of the policy is
jurisdictional, this clause is superceded by Articles 32, 1917
and 1932 of the Italian Civil Procedure Code, which provide that
an action to compel insurance coverage can be filed with the

court that has jurisdiction over the principal cause of action.[5]

Id. at ¶ 9; Second Declaration of Piero Pupini dated January 7, 2004 ("1/7/04 Pupini Decl.") at ¶ 4-5, Exh. B. These provisions supplant any contract clause that is less favorable to the insured party. 2/3/04 Pupini Decl. at ¶ 9. Thus, under Italian law, the forum selection clause is replaced by the above provisions of the Italian civil procedure code.

Moreover, under Italian law, the selection of Italian or foreign courts to adjudicate insurance disputes is regulated by articles 10 and 12 of the Brussels Convention dated September 27, 1968. See id. at ¶ 10; Convention on Jurisdiction and Enforcement of Judgments in Civil and Commercial Matters, Sept. 27, 1968 (reprinted in 29 ILM 1413 (1990)). Article 10 provides that "with respect to liability insurance, the insurer may also, if the law of the court permits it, be joined in proceedings which the injured party had brought against the insured." 1/7/04

---

[5]/ This Court assumes that Italian law applies because both parties primarily rely on Italian law in their submissions. See Wm. Passalacqua Builders Inc. v. Resnick Developers South, Inc., 933 F.2d 131, 137 (2d Cir. 1991) (parties reliance on laws of New York construed as consent to application of New York's substantive law for purposes of motions considered); Lehman v. Dow Jones & Co., 783 F.2d 285, 294 (2d Cir. 1986) (Friendly, J.) (the court does "not feel obliged to undertake an investigation" into choice of law). Although Generali argues without support that New York law should apply on this issue, both parties otherwise almost exclusively rely on Italian law. In any event, under New York's choice of law rules, Italian law would likely apply because the policy was negotiated in Italy, the "place of contracting" was Italy and the parties to the policy are domiciled in Italy. Booking v. General Star Mgmt. Co., 254 F.3d 414, 422-23 (2d Cir. 2001). Moreover, New York has no interest in what law is controlling because the policy "was issued by a foreign corporation to a foreign corporation." Id. at 423.

Pupini Decl. at ¶ 6.  Article 12 permits deviation from such a
provision only by an agreement on jurisdiction entered after the
dispute has arisen.  Id.  Thus, the forum selection clause may
not be controlling here since there is no evidence of any such
agreement.

Generali further argues that Autoattrezzature provided late
notice of its claim, entitling Generali to disclaim coverage.
However, even assuming Autoattrezzature's notice of its claim was
late, under Italian law, "the insurer would only be entitled to
reduce the indemnity in proportion to the detriment it has
suffered."  2/3/04 Pupini Decl. at ¶ 14.  Generali has not
demonstrated that it suffered any detriment because of the
alleged delay.

Finally, Generali argues that coverage does not exist
because the policy requires that if the product was not delivered
during the policy period, then there must have been another
Generali policy in effect at that time with no lapse in coverage.
Autoattrezzature counters that the policy covers claims made
during its term so long as the allegedly defective products were
sold in the U.S. while another insurance policy was in effect and
further provided that there was no lapse of coverage between any
prior policies and the policy issued by Generali.
Autoattrezzature's translation of the provision is unambiguous
and clearly affirms its interpretation:[6]

---

[6]/ Generali's translation of this policy provision is
substantially similar.  See 1/22/04 Roberto Aff., Exh. A (policy
(continued...)

> [T]his insurance shall cover also the products sold in
> the U.S. . . . .  Insurance coverage for the products
> sold in the U.S. . . . shall apply to claims submitted
> for the first time to the Insured during the period
> this policy is outstanding, with respect to products
> sold in the same period, or while other policies were
> outstanding in previous periods, without any
> interruption with the coverage supplied by the Company
> hereunder and providing for the same territorial
> extension.

12/4/03 Pupini Decl. at ¶ 2, Exh. A.

Autoattrezzature's other arguments regarding coverage are less persuasive.  Its reliance on the hearsay statements of Fabrizio Giuliano to establish the extra-contractual conduct of the parties is disputed and on application of Article 1370 strained.  However, given that there is no dispute that Autoattrezzature had an insurance policy issued by Generali and appears to have arguable reasons why coverage should be afforded under the policy, this Court finds that the claims are not so "preposterous . . . , facially invalid or utterly unsupportable" to establish a  "compelling reason" not to enter default against Generali.  <u>Wagstaff-El</u>, 913 F.2d at 57; <u>Westmark Development Corp. v. Century Sur. Co.</u>, 199 F.R.D. 491, 495-96 (W.D.N.Y. 2001) (denying vacatur of default where default was willful despite meritorious defense); <u>see also</u> <u>In re Chalasani</u>, 92 F.3d 1300, 1308 (2d Cir. 1996) ("even if [debtor] did have a meritorious defense . . . ., the willfulness of his default and the prejudice

---

[6]/ (...continued)
covers claims made during policy period and "relative to product
delivered during the same period, or during the period of
effectiveness of any other preceeding insurances in effect, with
no lapse end in continuity, with the above noted Company and
providing for analogous territorial extentsion").

to [creditor] that would result from setting aside the judgment amply supported the bankruptcy court's conclusion that good cause did not exist to provide the debtor with relief"); <u>Bobrow Greenapple & Skolnik v. Woods</u>, 865 F.2d 43, 44 (2d Cir. 1989) (affirming district court's denial of motion to vacate default judgment where defendants had "failed to prove that their neglect had been excusable, even though they showed that they had a meritorious defense and that setting aside the judgment would not prejudice [plaintiff]").

<u>Lack of Notice under Fed. R. Civ. P. 55(b)</u>

Finally, Generali argues that default judgment should not be entered because it was entitled to receive written notice and service of Autoattrezzature's default judgment papers.

Rule 55(b)(2) requires that an adverse party be served with notice of a motion for default only if that adverse party has "appeared" in the action. "[A]ppearance in an action typically involves some presentation or submission to the court." <u>Key Bank of Maine v. Tablecloth Textile Co. Corp.</u>, 74 F.3d 349, 353 (1st Cir. 1996); <u>see</u> <u>Martha Stewart Living Omnimedia LLC v. Beers Flower Shop, Inc.</u>, No. 98 Civ. 3398, 1998 WL 646648, at *3 (S.D.N.Y. Sept. 21, 1998). Nevertheless, under certain circumstances, informal communications between parties may rise to the level of an appearance if the adverse party indicates a clear intent to defend the litigation. <u>See</u> <u>Rogers</u>, 167 F.3d at 937; <u>Key Bank</u>, 74 F.3d at 353 & n.6; <u>State of New York v. Green</u>, No. 01-CV-196A, 2004 WL 1375555, at *4 (W.D.N.Y. June 18, 2004);

<u>RLS Assocs., LLC v. The United Bank of Kuwait PLC</u>, No. 01 Civ. 1290, 2002 WL 122927, at *5 (S.D.N.Y. Jan. 29, 2002).

Generali fails to evidence a clear indication to Autoattrezzature of its intent to defend this action. Although Generali lists several contacts between Autoattrezzature's counsel and Generali or Generali's representatives, Generali never indicated a clear intent to defend this litigation in any of the letters exchanged nor telephone conversations. <u>See</u> <u>Bermudez v. Reid</u>, 733 F.2d 18, 22 & n.8 (2d Cir. 1984) (single letter to Court asking for an extension of time to file an answer did not constitute an "appearance"). In any event, Generali does not describe which of these informal communications took place before Autoattrezzature filed its notice of motion on June 13, 2003. It also insists elsewhere in its submissions that Mr. Bailey, who had conversations with Mr. Popescu for over one year until October 2003, is not an employee of Generali. 3/18/04 Roberto Decl. at ¶ 11.

Similarly, although Generali's counsel points to its having contacted my chambers to inquire whether a motion for entry of default had been filed, Generali fails to mention that its inquiry was prompted by Autoattrezzature's June 13, 2003 filing of the notice of motion. Regardless, even if Generali is deemed to have appeared and was entitled to notice under Rule 55(b), there could be no violation of the notice requirement because it had not yet been triggered. Rule 55(b) states that a party who has appeared "shall be served with written notice of the

application for judgment at least 3 days prior to the hearing on such application."  No hearing had been scheduled for Autoattrezzature's application for default judgment when Generali moved for an enlargement of time to answer.  Therefore, Generali did not fail to receive notice prior to a hearing on Autoattrezzature's application for default judgment.  See RLS Assocs., 2002 WL 122927, at *6 (notice requirement not triggered until hearing scheduled on application for default judgment).

<u>CONCLUSION</u>

For the foregoing reasons, I respectfully recommend that the third party plaintiff's motion for default be granted and third party defendant Generali's motion be denied.

A copy of this report and recommendation is being filed electronically on this date.  Any objections to this report and recommendation must be filed with the Clerk of this Court and the Chambers of the Honorable Leonard B. Sand by June 15, 2005. Failure to file timely objections may waive the right to appeal the District Court's Order.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; Small v. Secretary of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

**SO ORDERED**.

Dated:     Brooklyn, New York
           May 31, 2005


_____/s/_____
MARILYN D. GO
UNITED STATES MAGISTRATE JUDGE